# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

## RYAN HAYGOOD; HAYGOOD DENTAL CARE, L.L.C.,

*PLAINTIFFS - APPELLANTS*

### v.

## CAMP MORRISON; C. BARRY OGDEN; KAREN MOORHEAD; DANA GLORIOSO,

*DEFENDANTS - APPELLEES*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA (NO. 5:13-cv-00335), HON. S. MAURICE HICKS, JR., PRESIDING

**ORIGINAL APPELLEE BRIEF OF CAMP MORRISON, C. BARRY OGDEN, KAREN MOORHEAD, AND DANA GLORIOSO**
*ORAL ARGUMENT REQUESTED*

**FAIRCLOTH MELTON SOBEL AND BASH, LLC**

Barbara Bell Melton (A.C.) (La. Bar #27956)
bmelton@fairclothlaw.com
Franklin "Drew" Hoffmann (La. Bar #35824)
dhoffmann@fairclothlaw.com
105 Yorktown Drive
Alexandria, LA 71303
Phone: (318) 619-7755/Fax: (318) 619-7744

**Counsel for Appellees**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### RYAN HAYGOOD; HAYGOOD DENTAL CARE, L.L.C.,

*PLAINTIFFS - APPELLANTS*

**v.**

### CAMP MORRISON; C. BARRY OGDEN; KAREN MOORHEAD; DANA GLORIOSO,

*DEFENDANTS – APPELLEES*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA (NO. 5:13-cv-00335), HON. S. MAURICE HICKS, JR., PRESIDING

### ORIGINAL APPELLEE BRIEF OF CAMP MORRISON, C. BARRY OGDEN, KAREN MOORHEAD, AND DANA GLORIOSO

### CERTIFICATE OF INTERESTED PERSONS AND ENTITIES

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

1. Defendants/Appellees are the following:
   a. Barry Ogden
   b. Camp Morrison
   c. Karen Moorhead
   d. Dana Glorioso

2. Counsel for Barry Ogden, Camp Morrison, Karen Moorhead, and Dana Glorioso are the following:
   a. Faircloth Melton Sobel & Bash, LLC
      i. Barbara Bell Melton
      ii. Franklin "Drew" Hoffman

3. Plaintiffs/Appellants are the following:
   a. Ryan Haygood, DDS
   b. Haygood Dental Care, LLC

4. Counsel for Plaintiffs/Appellants are the following:
   a. Harper Law Firm
      i. Jerald R. Harper
      ii. Anne E. Wilkes
   b. Kean Miller LLP
      i. Georgia N. Ainsworth

5. The following, who is not a party to this litigation, may also have an interest in the outcome of this litigation:
   a. Louisiana Department of Justice, Office of the Attorney General

 _/s/ Barbara Bell Melton_

**Attorney of Record for Defendants/Appellees, Barry Ogden, Camp Morrison, Karen Moorhead, and Dana Glorioso**

**STATEMENT REGARDING ORAL ARGUMENT**

This appeal involves multiple Orders and Memorandum Rulings from the U.S. District Court for the Western District of Louisiana that relate to and support the District Court's award of attorney fees to Appellees pursuant to 42 U.S.C. § 1988 and Louisiana Revised Statutes 51:1409. Oral argument would be beneficial to the Court as Appellants assert various misapplications of law by the District Court to support their position that an award of attorney fees was inappropriate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND ENTITIES.................... ii

STATEMENT REGARDING ORAL ARGUMENT........................ iv

TABLE OF AUTHORITIES ........................................... vi

I.    STATEMENT OF THE CASE ............................................... 1

II.   SUMMARY OF THE ARGUMENT ..................................... 8

III.  STATEMENT OF THE STANDARD OF REVIEW........................... 10

    A. Awards pursuant to 42 U.S.C. § 1988 .......................... 10

    B. Awards pursuant to La. R.S. § 51:1409 ........................ 11

IV.  LAW AND ARGUMENT ......................................... 11

    A. Attorney Fees under 42 U.S.C. § 1988............................ 11

        1. The Cause of Action Begins to Accrue When a Plaintiff is Aware of His Injury................................. 14

        2. The § 1983 Claim was Baseless and Frivolous..................... 21

        3. The Accrual Date for Malicious Prosecution Is Not Applicable................................................... 23

    B. Recoverability of attorney fees under LUTPA.............................. 27

        1. There Was No Good Faith Basis To Bring A LUTPA Claim Against Appellees.................................................28

        2. *Cheramie* Does Not Change Louisiana Law As To What Is Necessary To State A Claim Under LUTPA.......................... 33

        3. Civil Conspiracy................................................. 35

        4. The *Caldwell* and *IberiaBank* Decisions.............................37

    C. The Award Was Reasonable ......................................... 39

        1. The District Court Expressly Noted Its Thorough Review of The Billing Submissions.......................................39

        2. The Bills Submitted With Appellees' Time Reports Evidence Payment................................................41

CONCLUSION........................................................43

CERTIFICATE OF SERVICE.......................................... 45

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT.............45

# TABLE OF AUTHORITIES

## Cases

Abbyad v. Mathes Group, 95-1543 (La. App. 4 Cir. 3/14/96),
  671 So.2d 958 .................................................................................... 41 - 42

Aigbekaen v. Rosenstein, CV H-19-4148, 2020 WL 3250982
  (S.D. Tex. June 13, 2020)........................................................................... 16

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).................................3

Beckwith v. City of Houston, 790 Fed.Appx. 568 (5th Cir. 2019), *cert.*
  *denied sub nom.* Beckwith v. City of Houston, Texas, 140 S.Ct. 1127;
  206 L.Ed.2d 190 (2020)................................................................13, 15 - 17

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .............................. 3, 38

Bobby & Ray Williams P'ship, L.L.P. v. The Shreveport Louisiana Hayride
  Co., L.L.C., 38,224, p. 12 (La. App. 2 Cir. 4/21/04); 873 So.2d 739,
  *writ denied*, 04-1215 (La. 10/8/04), 883 So.2d 1022 ................................ 11

Branden v. F.H. Paschen, S.N. Nielsen, Inc., CV 19-2406,
  2019 WL 1760694 (E.D. La. Apr. 22, 2019) ............................................. 36

Brossette v. City of Baton Rouge, 837 F.Supp. 759 (E.D. La. 1993) 19, 20 - 21

Brown v. Pool, 79 F.App'x 15 (5th Cir. 2003)............................................... 22

Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co., CV 17-0200,
  2018 WL 2209165 (W.D. La. May 11, 2018), *aff'd sub nom.* Caldwell
  Wholesale Co., L.L.C. v. R J Reynolds Tobacco Co., 781 Fed.Appx. 289
  (5th Cir.2019)........................................................................................... 37

Cantu Servs., Inc. v. Frazier, 682 Fed.Appx. 339 (5th Cir. 2017)................ 12

Castellano v. Fragozo, 352 F.3d 939 (5th Cir.2003) ............................. 23 - 24

Cenac v. Orkin, L.L.C., 941 F.3d 182 (5th Cir. 2019)................................... 28

Cheramie Services Inc. v. Shell Deepwater Prod., Inc., 09-1633
  (La. 4/26/10), 35 So.3d 1053 ....................................................... 32 -34, 37

<u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421 (1978) ............... 12

<u>Cohly v. Mississippi Institutions of Higher Learning</u>, 23-60232,
2024 WL 65432 (5th Cir. Jan. 5, 2024) ............................................. 8, 14

<u>DeLeon v. Abbott</u>, 687 Fed.Appx. 340 (5th Cir. 2017)................................40

<u>Doe v. Fitch</u>, 22-60481, 2023 WL 2882717 (5th Cir. Apr. 11, 2023)........... 10

<u>Doe v. Silsbee Indep. Schoo. Dist.</u>, 440 Fed. Appx. 421 (5th Cir. 2011) .12, 23

<u>Fox v. Vice</u>, 131 S.Ct. 2205 (2011)................................................................. 12

<u>Funk v. Stryker Corp.</u>, 631 F.3d 777 (5th Cir. 2011) .................................... 26

<u>Fusilier v. Zaunbrecher</u>, 806 Fed. Appx. 280 (5th Cir. 2020) .............. 23, 26

<u>Gamez-Abrego v. Orleans Par. Jail</u>, No. 10-1595, 2010 WL 3523038
(E.D. La. July 19, 2010) *report and recommendation adopted*,
No. 10-1595, 2010 WL 3523037 (E.D. La. Sept. 1, 2010)......................... 22

<u>Guerra v. Castillo</u>, 82 F.4th 278 (5th Cir. 2023) ......................................... 24

<u>Heck v. Humphrey</u>, 512 U.S. 477; 114 S.Ct. 2364; 129 L.Ed.2d 383 (1994) 24

<u>Horne v. Polk</u>, CV-18-08010-PCT-SPL, 2019 WL 1676016, (D. Ariz. Apr. 17,
2019), *aff'd*, 19-15942, 2020 WL 3469112 (9th Cir. June 25, 2020)........ 25

<u>IberiaBank v. Broussard</u>, 907 F.3d 826 (5th Cir. 2018)...................31, 34, 37

<u>Jackson v. Lawmakers</u>, CV 19-10137, 2019 WL 2870949 (E.D. La. June 10,
2019), *report and recommendation adopted*, CV 19-10137, 2019 WL
2869084 (E.D. La. July 3, 2019)............................................................. 22

<u>Jeanpierre v. Orleans Sheriff Gusman</u>, No. 10-4395, 2010 WL 5638296
(E.D. La. Nov. 30, 2010) *report and recommendation adopted sub nom.*
<u>Jeanpierre v. Gusman</u>, No. 10-4395, 2011 WL 231747 (E.D. La. Jan. 24,
2011).......................................................................................................... 22

<u>Lehman v. Guinn</u>, 2:20-CV-00736, 2021 WL 935887
(W.D. La. Feb. 9, 2021) ..........................................................................15

<u>Marks v. Motor City</u>, 2018-548 (La. App. 3 Cir. 2/20/19), 265 So.3d 86 ... 36

McDonald v. Bowen, 54,798 (La. App. 2 Cir. 11/16/22), 351 So.3d 914 ...... 25

McDonough v. Smith, 139 S.Ct. 2149; 204 L.Ed.2d 506
(2019) .........................................................................15, 16, 19, 23, 24, 26

McGee v. Krebs, 1:15-CV-65-LG-RHW, 2015 WL 7290965 (S.D. Miss. Nov.
18, 2015), *judgment entered*, 1:15-CV-65-LG-RHW, 2015 WL 7307096
(S.D. Miss. Nov. 18, 2015) ........................................................................ 22

Monacelli v. City of Dallas, 3:21-CV-2649, 2023 WL 9052013 (N.D. Texas,
Dallas Division 12/29/23) .......................................................................... 14

Moreau v. St. Landry Par. Fire Dist. No. 3, 413 F.Supp.3d 550 (W.D. La.
2019), *aff'd*, 19-30767, 2020 WL 1696124 (5th Cir. Apr. 7, 2020) .......... 18

Morgan v. Chapman, 969 F.3d 238 (5th Cir. 2020) ................................... 24

Myers v. City of W. Monroe, 211 F.3d 289 (5th Cir. 2000) ........................ 12

Nursing Enterprises, Inc. v. Marr, 30,776 (La. App. 2 Cir. 8/19/98), 719
So.2d 524............................................................................................... 34

Perez v. Physician Assistant Bd., 765 Fed.Appx. 960 (5th Cir. 2019), *cert.
denied*, 140 S.Ct. 133; 205 L.Ed.2d 34 (2019)................................ 17-19, 21

Perez v. Reilley, 9:19-CV-185, 2020 WL 2212512
(E.D. Tex. Jan. 13, 2020).......................................................................... 16

Pikaluk v. Horseshoe Entm't, L.P., 19-30456, 810 Fed. Appx. 243
(5th Cir. 2020) ........................................................................................ 31

Piotrowski v. City of Houston, 237 F.3d 567 (5th Cir. 2001) ................. 8, 14

Pope v. MCI Telecommunications Corp., 937 F.2d 258 (5th Cir. 1991) ...... 22

Provensal v. Gaspard, 524 F. App'x 974 (5th Cir. 2013) ....................... 12, 22

Puderer v. Cain, CV 19-156-JWD-RLB, 2019 WL 4315019
(M.D. La. Aug. 19, 2019) .......................................................................... 22

Rascoe v. Cody, 763 Fed.Appx. 228 (3rd Cir. 2019)...................................17

S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc., CIV.A. 06-9170,
2015 WL 5059504 (E.D. La. Aug. 26, 2015)...............................................11

<u>Snow Ingredients, Inc. v. SnoWizard, Inc.</u>, 833 F.3d 512 (5th Cir. 2016)...36

<u>Thibaut v. Thibaut</u>, 607 So.2d 587 (La. App. 1 Cir. 1992), *writ denied*, 612 So.2d 101 (La. 1993), and *writ denied*, 612 So.2d 37 (La. 1993), and *writ denied*, 612 So.2d 37 (La. 1993), and *writ denied*, 612 So.2d 38 (La. 1993), and *writ denied*, 612 So.2d 38 (La. 1993) ...............................42

<u>Tracie Robinson V. Sheriff Daniel Edwards, *et al*</u>., CV 22-3734, 2024 WL 382435 (E.D. La. Feb. 1, 2024) ...............................14

<u>United States v. Mississippi</u>, 921 F.2d 604 (5th Cir. 1991)..........................12

<u>Valdez v. U.S. Marshal Serv.</u>, 6:13-CV-2376, 2014 WL 4103204 (W.D. La. Aug. 13, 2014)...............................22

<u>Weeks v. Collier</u>, 22-10126, 2023 WL 7703823 (5th Cir. 2023)...............................8, 14

<u>Williams v. Thomas</u>, CV H-22-3823, 2023 WL 1112499 (S.D. Tex. Jan. 30, 2023) ...............................18

<u>Willis v. W. Carroll Par. Det. Ctr.</u>, No. 09-1716, 2010 WL 2291994 (W.D. La. Apr. 28, 2010) *report and recommendation adopted*, No. 09-1716, 2010 WL 2291996 (W.D. La. June 2, 2010)...............................22

<u>Zihlavsky v. Police Dep't of Bossier City</u>, 244 F.3d 136 (5th Cir. 2000) .....22

**Statutes**

42 U.S.C. § 1983 ...............................*passim*

42 U.S.C. § 1988 ...............................*passim*

La. C.C. art. 2324...............................35

La. R.S. 37:751 ...............................1

La. R.S. 51:1402...............................28

La. R.S. 51:1404...............................2

La. R.S. 51:1405...............................28, 29, 34

La. R.S. 51:1409...............................*passim*

## Other Authorities

Louisiana Administrative Code, Title 46, Part XXXIII, § 760 ...................... 1

Louisiana Administrative Code, Title 46, Part XXXIII, § 781 .................... 16

## I.  STATEMENT OF THE CASE

Appellants Ryan Haygood, DDS and Haygood Dental Care, LLC (collectively "Haygood") filed two separate lawsuits related to an administrative proceeding before the Louisiana State Board of Dentistry ("Dental Board") wherein Dr. Haygood's dental license was revoked.[1] Specifically, in response to multiple patient complaints lodged with the Dental Board (ROA.1700), a statutorily required investigation ensued,[2] which culminated in a formal hearing panel of the Dental Board issuing a ruling on November 8, 2010 finding that Dr. Haygood violated provisions of the Louisiana Dental Practice Act. *See e.g.*, ROA.1704 at ¶ 66.

The first lawsuit was filed in State Court on September 26, 2011, naming a myriad of individuals, including Appellees, who were involved in various ways in the administrative proceedings before the Dental Board. ROA.383. Appellee Barry Ogden was the Executive Director of the Dental Board, and Appellee Camp Morrison was the investigator retained to investigate the complaints against Dr. Haygood. Appellees Dana Glorioso and Karen Moorhead, in connection with the investigation, saw Dr.

---

[1] The Dental Board's administrative process is established by Louisiana law. *See* La. R.S. 37:751, *et seq.*

[2] *See e.g.,* Louisiana Administrative Code, Title 46, Part XXXIII, § 760.

Haygood as new patients. The state suit asserted general tort liability, a Louisiana Unfair Trade Practice claim (LUTPA) (La. R.S. 51:1404 *et seq.*), violation of Art. 1 § 2 of the Louisiana State Constitution, and conspiracy.

Seventeen months later, the second suit—this suit—was filed in Federal Court on February 13, 2013 naming almost identical defendants as the State Court suit and asserted claims under LUTPA, the Sherman Anti-Trust Act, defamation, 42 U.S.C. § 1983, and conspiracy. ROA.57.[3] It is not disputed that the two suits contain identical factual allegations and involve the same nucleus of operative facts. Indeed, the Complaint filed in this suit is mostly a verbatim recitation of the State Court Petition.[4]

On May 3, 2013, Appellees filed a Motion to Dismiss Pursuant to 12(b)(6) as to all of Haygood's claims. Specifically, dismissal was sought based upon prescription as to the defamation, LUTPA, and § 1983 claims. ROA.472-474. And dismissal of the LUTPA, Sherman Act, and defamation claims was sought based upon the failure to state a claim. ROA.472-474.

On March 7, 2014, Haygood filed a "First Supplemental, Amended and Restated Complaint for Damages Arising Out of Violations of 42 U.S.C.

---

[3] Brian Begue was named as a defendant in this suit but was not named in the State Court suit. And the Dental Board is a defendant in the pending State Court suit but was never named in this Federal suit. Appellees, Dr. Dies and his dental company, Dr. Hill and his dental company, and Dr. Blackwood were named as defendants in both suits.

[4] State Court Petition (ROA.383) and Federal Complaint (ROA.57).

1983, 15 U.S.C. §1 and §2 [and] for Declaratory and Injunctive Relief."
ROA.1687. Haygood's Restated Complaint was considered by the District
Court when ruling on Appellees' Motion to Dismiss.[5]

On March 31, 2014, the Court entered an Order (ROA.1856) and
Memorandum Ruling (ROA.1832) granting Appellees' Motion and
dismissing Haygood's claims. Relevant here, the District Court found the §
1983 claims were barred by prescription as Haygood "clearly knew, or
should have known, of the overt acts which might constitute a § 1983
violation at least two years before the instant suit was filed." ROA.1836.
Further, the District Court found that, irrespective of the finding of
prescription, Appellees' Motion to Dismiss would "nonetheless be granted
because Dr. Haygood's bald conclusory allegation that these Defendants
were involved in a conspiracy with the Dental Board fails the plausibility
standard established in <u>Twombly</u> and <u>Iqbal</u>." ROA.1837 (internal citations
omitted).

As to Haygood's LUTPA claims, the District Court found the
conspiracy allegations were not plausible and, when evaluated on an
individual basis as to the four Appellees, "Dr. Haygood fails to allege any act

---

[5] *See* ROA.1685 ("Judge Hicks will consider the amended complaint when he rules on the
pending motions to dismiss.").

by these Defendants which would enable them to achieve an unfair competitive advantage over Plaintiffs (nor can he since none of these Defendants are dentists)." ROA.1843.

Notably, despite referencing the conspiracy claim in connection with the LUTPA claim in Brief to this Court, Haygood does not substantively address why the District Court's finding that Haygood failed to plead a plausible conspiracy claim was in error. Instead, Haygood essentially lumps LUTPA and conspiracy together, despite the District Court's separate findings as to each, and limits his argument to whether a LUTPA claim can be brought against Appellees individually (absent a conspiracy).[6] Nonetheless, a review of the Complaint (ROA.57) supports the District Court's finding on conspiracy as the Complaint lacks factual support that a conspiracy amongst the defendants existed and is marred with supposition, conjecture, conclusory statements, and unsupported beliefs.

In any event, as the prevailing parties, Appellees sought an award for reasonable attorney fees pursuant to 42 U.S.C. § 1988(b) and La. R.S. § 51:1409 on the grounds that the § 1983 and LUTPA claims were frivolous, groundless, and brought in bad faith or for purposes of harassment. ROA.2889. On March 14, 2019, the District Court granted Appellees' Motion

_____

[6] *See* Haygood's Brief, pp. 38 – 39 and 43 – 44.

4

for Attorney's Fees. ROA.3564.

Regarding the § 1983 claim, the District Court held it was time-barred and, thus, "meritless and [] properly deemed frivolous." ROA.3566. Additionally, the District Court found Haygood's LUTPA claims, based upon "the totality of the record," "were groundless and were brought in bad faith or for the purposes of harassment" because Haygood "failed to allege any act by Defendants which would enable them to achieve an unfair competitive advantage" and "such allegations were not possible because none of these Defendants were dentists." ROA.3567. The District Court did not award a determined amount at that time but, instead, ordered Appellees to "file a separate motion to submit detailed time reports, such that a lodestar analysis can be performed to determine the amount of reasonable attorney fees." ROA.3567. Accordingly, Appellees submitted their Detailed Time Reports. ROA.3814-3977.

Haygood filed a Motion for Reconsideration of and/or to Alter or Amend the District Court's granting of Appellees' attorney fees motion solely as to the award of fees under LUTPA, making similar arguments as made in this appeal. ROA.3595. On February 7, 2020, after reviewing "all of the pertinent parts of the record and likewise consider[ing] the legal standards applicable to Rules 54, 59, and 60 [of the Federal Rules of Civil

Procedure]," the District Court denied Haygood's Motion for Reconsideration. ROA.3982.

On August 17, 2021, the District Court issued its Memorandum Ruling as to the amount of attorney fees to be awarded. ROA.3991.[7] With respect to recoverable attorney fees in the case of multiple claims, only some of which are statutorily recoverable, the District Court found that "all of Plaintiff's claims rest on a common core of operative facts such that it would be impracticable to separate the hours attributable to each related claim." ROA.3995. And the District Court noted that Appellees "have exercised sound billing judgment in seeking this award of attorney's fees by excluding entries related to Plaintiffs' case pending in State Court and writing off otherwise unnecessary entries before submitting time records...." ROA.4012. Finally, the District Court expressly stated in its Memorandum Ruling that it "conducted a thorough review of the Detailed Time Report submitted" by Appellees (ROA.4012) and, after such review and applying the lodestar method, awarded $110,261.16 in attorney fees and $732.46 in costs. ROA.4015.

On September 13, 2021, pursuant to Rules 54, 59, and 60 of the Federal Rules of Civil Procedure, Haygood filed a Motion for

---

[7] District Court's Order (ROA.4024).

Reconsideration as to the District Court's monetary award. ROA.4204. On January 28, 2022, the District Court issued its Memorandum Order (ROA.4378) finding that "this Court has previously addressed in great detail not only the propriety of the award of attorney fees, but also its lodestar analysis to reach the quantum of attorney fees" and "considered the interwoven nature of the many claims and proceedings in this case, all of which involved a common core of facts and were based on related legal theories." ROA.4379. As a result, the Court denied the Motion for Reconsideration except as to the argument of prematurity. To that end, the Court agreed to stay the enforcement of the attorney fees award until this Court ruled on Haygood's appeal of the granting of Appellees' Motion to Dismiss pending at that time (Case No. 18-30866). ROA.4380.

Once this Court issued its March 2, 2023 Opinion affirming the District Court's denial of Haygood's Motion for Reconsideration and Haygood's Motion for Extension of Time to File a Notice of Appeal and dismissing the remainder of the appeal for lack of jurisdiction (ROA.4382-4395), the District Court vacated its previous Ruling staying its Order awarding attorney fees. ROA.4396. On April 4, 2023, Haygood filed a Notice of Appeal. ROA.4398.

## II.   SUMMARY OF THE ARGUMENT

The District Court's award of attorney fees pursuant to 42 U.S.C. § 1988 was legally correct. ROA.3564, 3991. Haygood was aware of the revocation of his dental license on or about November 8, 2010 (ROA.66, 82), and all allegations against Appellees relate to purported conduct or actions that occurred *prior* to November 8, 2010. ROA.57. Haygood's § 1983 claims were clearly prescribed when this suit was filed on February 13, 2013 (ROA.57) and, thus, appropriately characterized by the District Court as "meritless" and "frivolous." ROA.3566. Haygood's efforts to invoke the accrual period for "malicious prosecution" or "fabrication of evidence" is unavailing and lacks legal support. Moreover, it is well settled in this Circuit that the accrual period for a § 1983 claim begins when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[8] Haygood had the requisite knowledge on or about November 8, 2010. At a minimum, Haygood had the requisite knowledge when he filed his State Court suit making identical factual

---

[8] Cohly v. Mississippi Institutions of Higher Learning, 23-60232, 2024 WL 65432, at *2 (5th Cir. Jan. 5, 2024) (internal citations omitted); *see also* Jackson v. City of Hearne, 959 F.3d 194, 205 (5th Cir. 2020) (*quoting* Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001)) ("Piotrowski II"), and Weeks v. Collier, 22-10126, 2023 WL 7703823, at *3 (5th Cir. Nov. 15, 2023) ("The federal discovery rule clarifies the accrual date for a Section 1983 claim is when the plaintiff becomes aware of both the existence of an injury and its cause.").

allegations in September of 2011 – some seventeen months before this suit was filed.

Next, Haygood failed to state a claim under LUTPA, and the conspiracy claim lacked plausibility. Absent a viable conspiracy claim and applying LUTPA to the individual Appellees, no claim was stated (or could be stated) against these Appellees under the facts pleaded by Haygood and his alleged injury/damage. The error in Haygood's analysis is that the District Court's finding as to LUTPA was not a "standing" issue; instead, the issue is whether a LUTPA claim can stand against these Appellees. As there is no competitive motive or advantage on the part of Appellees, which is an essential element of a LUTPA claim, related to their purported actions and Haygood's contention that that their goal was to remove him as a competitor in the Shreveport/Bossier City dental market, the claim was groundless and brought in bad faith or for purposes of harassment. The award of attorney fees under LUTPA should be affirmed. ROA.3567, 4015.

Finally, the attorney fees award of $110,261.16 was reasonable. At the time of filing Appellees' Motion for Attorney Fees, this case had been pending for nearly five years and the District Court's docket sheet (ROA.1) evidences the motion practice that occurred prior to the Court's award. Despite Haygood's conclusory statement that "there is no indication in the

record that the District Court engaged in" closely scrutinizing Appellees'

detailed billing submissions,[9] the District Court expressly stated it

"conducted a thorough review of the Detailed Time Report submitted by"

Appellees. ROA. 4012.

Finally, Haygood misrepresents that there is a burden on Appellees to

show that the legal bills were paid before attorney fees can be awarded;

regardless, the bills submitted by Appellees, which the District Court

reviewed, reflect that payments were made. *See, e.g.,* ROA.3838, 3845,

3846. Applying the lodestar method, as the District Court did, the attorney

fees awarded were reasonable and should be affirmed.

## III.   STATEMENT OF THE STANDARD OF REVIEW

### A.   Awards pursuant to 42 U.S.C. § 1988

As recently held by this Court, "We review awards of attorney's fees

'for abuse of discretion, reviewing factual findings for clear error and legal

conclusions de novo.'" <u>Doe v. Fitch</u>, 22-60481, 2023 WL 2882717, at *2 (5th

Cir. Apr. 11, 2023) (internal citations omitted). And where the district court

provides "a clear explanation for the fee award, 'we cannot overemphasize

the concept that a district court has broad discretion in determining the

amount of a fee award.'" <u>Id.</u> (internal citations omitted). Here, the District

---

[9] Haygood's Appellant Brief, p. 18.

Court provided a clear explanation for why it found the award was warranted (the claim was prescribed), and Haygood has failed to carry the burden of showing the District Court abused its discretion.

### B. Awards pursuant to La. R.S. § 51:1409

A "court has discretion in determining whether to award attorney fees under" LUTPA and appellate review is limited to whether the lower court's decision was an abuse of that discretion. <u>Bobby & Ray Williams P'ship, L.L.P. v. The Shreveport Louisiana Hayride Co., L.L.C.</u>, 38,224, p. 12 (La. App. 2 Cir. 4/21/04); 873 So.2d 739, 746, *writ denied*, 04-1215 (La. 10/8/04); 883 So.2d 1022.[10] Haygood has not established that the District Court abused its discretion in finding an award of fees was warranted considering the failure to allege a plausible conspiracy claim and the unavailability of a LUTPA claim against Appellees under Haygood's alleged facts and injury/damage.

## IV. LAW AND ARGUMENT

### A. Attorney Fees under 42 U.S.C. § 1988

In certain civil rights cases, including § 1983 actions, a court has discretion to award the prevailing party "a reasonable attorney's fee." 42

---

[10] *See also* <u>S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.</u>, CIV.A. 06-9170, 2015 WL 5059504, at *10 (E.D. La. Aug. 26, 2015) ("Courts have discretion in determining whether to award attorney's fees under this provision.").

U.S.C. § 1988(b). The Supreme Court has held that § 1988 authorizes a district court to award attorney's fees to a defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation."[11] Further, the "presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed."[12]

Generally, in determining whether a plaintiff's claims are frivolous, courts should consider "whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court held a full trial."[13] However, these factors are "guideposts" and frivolousness must be judged on a case-by-case basis.[14] "Where a claim is 'so lacking in merit' as to render it groundless, it may be classified as frivolous."[15]

The District Court found that the prescriptive period (*i.e.*, accrual date) began on or about November 8, 2010—the date of the "single act of the Dental Board revoking Dr. Haygood's Dental License." ROA.1837. To

---

[11] Fox v. Vice, 131 S.Ct. 2205, 2213 (2011) (citing Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)); *see also* Cantu Servs., Inc. v. Frazier, 682 Fed.Appx. 339, 342 (5th Cir. 2017).

[12] Fox, at 2214.

[13] Myers v. City of W. Monroe, 211 F.3d 289, 292 (5th Cir. 2000).

[14] Doe v. Silsbee Indep. Sch. Dist., 440 Fed.Appx. 421, 425 (5th Cir. 2011) (*per curiam*).

[15] Provensal v. Gaspard, 524 F. App'x 974, 976 (5th Cir. 2013) (citing United States v. Mississippi, 921 F.2d 604, 609 (5th Cir. 1991)).

reiterate, Haygood claims the actions of Appellees (and others) resulted in (or contributed to) the revocation of his dental license – *i.e.*, he did not receive a fair proceeding before the Dental Board. ROA.1720, 1725-1726, 1731. Thus, the date that Haygood became aware of his injury was the day his dental license was revoked. Further, the District Court found it relevant that Haygood's State Court case—filed in September 2011—set forth identical factual allegations and pled the same injury/damage as in this suit but did *not* assert a § 1983 claim therein. ROA.1836.[16]

Haygood's argument is that the District Court erred in finding that the law regarding when a § 1983 claim begins to accrue was "settled"[17] and contends the wrong accrual period was applied.[18] In turn, Haygood argues that the claims were not meritless or frivolous such that an award of attorney's fees under § 1988 was appropriate.[19] But the date of accrual for a § 1983 claim in this Circuit is well-settled and Haygood's claims were clearly

---

[16] *See also* State Court Petition at ROA.383.

[17] Haygood's Appellant Brief, pp. 17, 22, and 34.

[18] Haygood's Appellant Brief, pp. 35 – 38.

[19] Haygood does not take issue with the District Court's application of a one-year prescriptive period under Louisiana Civil Code article 3492. *See* ROA.1836 ("Therefore, the claims asserted in this instant case are subject to a one (1) year prescriptive period."); *see also* Beckwith v. City of Houston, 790 Fed.Appx. 568, 572 (5th Cir. 2019), *cert. denied sub nom*. Beckwith v. City of Houston, Texas, 140 S.Ct. 1127; 206 L.Ed.2d 190 (2020) ("And federal courts use the forum state's general personal injury limitations period to govern claims under § 1983.").

prescribed at the time this suit was filed in 2013.

1.  The Cause of Action Begins to Accrue When a Plaintiff is
    Aware of His Injury

As held by this Court less than two months ago, a cause of action,

including a § 1983 claim, begins to accrue when the plaintiff becomes aware

of an injury and the causal connection to the alleged action of the

defendant(s):

> Although 42 U.S.C. § 1983 does not provide a limitations period,
> we borrow the forum state's general personal injury period …
> For § 1983, "the statute of limitations begins to run from the
> moment the plaintiff becomes aware that he has suffered an
> injury or has sufficient information to know that he has been
> injured." "A plaintiff's awareness encompasses two elements: (1)
> The existence of the injury; and (2) causation, that is, the
> connection between the injury and the defendant's actions."[20]

Or as stated in a recent decision out of the Eastern District of Louisiana, in

adjudicating a § 1983 claim, "'the statute of limitations begins to run 'when

the plaintiff is in possession of the 'critical facts that he has been hurt and

who has inflicted the injury….'"[21] "Actual knowledge is not required if 'the

---

[20] Cohly v. Mississippi Institutions of Higher Learning, 23-60232, 2024 WL 65432, at *2
(5th Cir. Jan. 5, 2024) (internal citations omitted); *see also* Jackson v. City of Hearne,
959 F.3d 194, 205 (5th Cir. 2020) (quoting Piotrowski v. City of Houston, 237 F.3d 567,
576 (5th Cir. 2001)) ("Piotrowski II") and Weeks v. Collier, 22-10126, 2023 WL 7703823,
at *3 (5th Cir. Nov. 15, 2023).

[21] Tracie Robinson V. Sheriff Daniel Edwards, *et al*., CV 22-3734, 2024 WL 382435, at *2
(E.D. La. Feb. 1, 2024); *see also* Monacelli v. City of Dallas, 3:21-CV-2649, 2023 WL
9052013, *3 (N.D. Texas, Dallas Division December 29, 2023).

circumstances would lead a reasonable person to investigate further."[22] This well-settled rule in this Circuit is simply ignored by Haygood in Brief. Despite Haygood's contentions to the contrary, the applicable accrual period in this Circuit is not "evolving" or unclear[23] and the District Court did not abuse its discretion in finding the § 1983 claim prescribed and, in turn, frivolous.

To avoid the "frivolous" finding by the District Court, Haygood argues that the District Court applied the wrong accrual date and points to a June 20, 2019 Supreme Court case —McDonough v. Smith, 139 S.Ct. 2149; 204 L.Ed.2d 506 (2019)—to support that the § 1983 claims were not prescribed and, moreover, that the accrual date was not "clear" or "settled" so, in turn, the District Court erred in finding the claim frivolous. As discussed below, the McDonough decision does not support (1) that the § 1983 claim was not frivolous; (2) that the applicable accrual period here is "malicious prosecution", or (3) that the law in this Circuit was not settled as to when a § 1983 claim begins to accrue.

In addition to the 2024 Cohly decision quoted above, this Court's

---

[22] Lehman v. Guinn, 2:20-CV-00736, 2021 WL 935887, at *4 (W.D. La. Feb. 9, 2021), *report and recommendation adopted*, 2:20-CV-00736, 2021 WL 929885 (W.D. La. Mar. 10, 2021).

[23] Haygood's Appellant Brief, pp. 33 – 34.

decision in <u>Beckwith v. City of Houston</u>, 790 Fed.Appx. 568 (5th Cir. 2019),

*cert. denied sub nom.* <u>Beckwith v. City of Houston</u>, 140 S.Ct. 1127; 206

L.Ed.2d 190 (2020), was decided some four months *after* <u>McDonough</u> and

clearly states this Circuit's position on when the accrual period begins:

> Accrual of a § 1983 claim is governed by federal law. "'Under federal law, the [limitations] period **begins to run the moment the plaintiff becomes aware that [s]he has suffered an injury or has sufficient information to know that [s]he has been injured**.'" *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (*quoting Russell v. Bd. of Trs. of the Firemen*, 968 F.2d 489, 493 (5th Cir. 1992))."

<u>Beckwith</u>, at 574 (some internal citations omitted) (emphasis added).[24]

Here, during the administrative process before the Dental Board, Haygood

conducted written discovery and took depositions;[25] thus, the alleged

improper actions by Appellees were known to Haygood *during* the

---

[24] *See also* <u>Aigbekaen v. Rosenstein</u>, CV H-19-4148, 2020 WL 3250982, at *3 (S.D. Tex. June 13, 2020) ("A cause of action accrues, under federal law, when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 589-90 (5th Cir. 1999).") and <u>Perez v. Reilley</u>, 9:19-CV-185, 2020 WL 2212512, at *2 (E.D. Tex. Jan. 13, 2020), *report and recommendation adopted*, 9:19-CV-185, 2020 WL 2200312 (E.D. Tex. May 5, 2020) ("Under federal law, accrual begins 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.' The plaintiff does not need to know that he has a legal cause of action, he only needs to know the facts that would support a legal claim.") (internal citations omitted).

[25] *See, e.g.,* Louisiana Administrative Code, Title 46, Part XXXIII, § 781; *see also* the Louisiana Fourth Circuit Opinion (ROA.90) attached to Plaintiff's Complaint that discusses the alleged actions of Appellees, which evidences that these actions were part of the record of the proceedings before the Dental Board and, thus, were known to Haygood at the time of the November 8, 2010 revocation.

administrative process and his purported damage/injury was known when his dental license was revoked on November 8, 2010.

In addition to <u>Beckwith v. City of Houston</u>, 790 Fed.Appx. 568, 574 (5th Cir. 2019), another decision from this Court provides more than just guidance - it dictates that Haygood's claims were clearly time-barred and, thus, properly deemed frivolous. <u>Perez v. Physician Assistant Bd.</u>, 765 Fed.Appx. 960 (5th Cir. 2019), *cert. denied*, 140 S.Ct. 133; 205 L.Ed.2d 34 (2019), is a strikingly similar case wherein this Court addressed when a § 1983 claim begins to accrue when a physician assistant's license was revoked in a state licensing board administrative proceeding.[26]

In <u>Perez</u>, while the plaintiff filed a response to a complaint lodged with the licensing board, he failed to appear at his hearing and, on March 7, 2014, the licensing board entered a default judgment against Perez and revoked his physician assistant's license. In 2015 and 2016, Perez filed multiple state

---

[26] *See also* <u>Rascoe v. Cody</u>, 763 Fed.Appx. 228, 232 (3rd Cir. 2019) ("Because Plaintiffs complain of conduct leading up to the license revocation, they were objectively aware of the consequence and injury from such conduct when they received the April 2013 letter revoking their license to operate . . . The accrual date is also unaffected by Plaintiffs' administrative appeal. Exhaustion of state remedies is not required where an administrative process is remedial or designed to vindicate a wrong by the state. Since Plaintiffs were not required to exhaust state remedies before filing this lawsuit, their pursuit of an administrative remedy by appealing the revocation has no effect on the statute of limitations. Therefore, because Plaintiffs' § 1983 claims accrued in April 2013 and the statute of limitations expired in April 2015, the claims in Plaintiffs' May 2015 complaint are time-barred.") (internal citations omitted).

court suits, all of which were dismissed as improperly filed and untimely. Perez, at 960. Thereafter, on March 5, 2018, Perez filed suit in federal court against the licensing board and its presiding officer, in her official and personal capacities, asserting §1983 due process violations and a violation of the Takings Clause of the United States and Texas Constitutions. Perez, at 963.

This Court affirmed the granting of the defendant's 12(b)(6) motion, which found Perez's claims were time-barred:

> Federal law governs when the cause of action accrues and dictates that the limitations period begins **when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured**. **Perez became aware of the injury on March 7, 2014 when his license was revoked**, which means that the present suit filed on March 5, 2018 is time-barred.

Perez, at 963 (internal citations omitted) (emphasis added).[27] In an effort to avoid the dismissal, Perez argued that equitable tolling should apply, to which this Court disagreed finding that "he has alleged no exceptional

---

[27] (Emphasis added). *See also* Moreau v. St. Landry Par. Fire Dist. No. 3, 413 F.Supp.3d 550, 564–65 (W.D. La. 2019), *aff'd*, 19-30767, 2020 WL 1696124 (5th Cir. Apr. 7, 2020) ("[Plaintiff] was aware of his termination, the injury from which the statute of limitations begins to run, and the one-year statute of limitations ran prior to his latest amendment.") and Williams v. Thomas, CV H-22-3823, 2023 WL 1112499, at *1 (S.D. Tex. Jan. 30, 2023) (Plaintiffs alleged a conspiracy to steal money in a domestic relations case and filed suit against an attorney and a state-court Judge. Dismissing the case as untimely, the court found plaintiffs' claims "arose at the September 17, 2017 hearing, when the state court made the ruling that allegedly violated the plaintiffs' rights and caused them injury.").

circumstances justifying tolling—he was aware of his injury and was in no way precluded from filing a federal action." Perez, at 964.

While Appellees fully anticipate, as it has been argued before, that Haygood will attempt to distinguish the Perez decision based on the fact it involved a default judgment and this case involves Haygood's allegations of misconduct during the administrative proceeding, this is a distinction without a difference. Like Perez, Haygood's argument is that he was injured by the revocation of his professional license, so regarding the analysis as to when a cause of action begins to accrue for such a claim, Perez and this case are identical.[28] Notably, the U.S. Supreme Court denied writs in Perez on October 7, 2019 - almost four months *after* its McDonough decision. *See* Perez v. Physician Assistant Bd., 140 S.Ct. 133; 205 L.Ed.2d 34 (2019).

Finally, the District Court found the Eastern District's decision in Brossette v. City of Baton Rouge, 837 F.Supp. 759 (E.D. La. 1993) compelling as to the date a § 1983 begins to accrue in a case that also involved the revocation of a state-regulated license; in that instance, the suspension of a bar owner's liquor license. In Brossette, after his liquor

---

[28] *See* Perez, at 962 ("Jose Perez's license to practice as a physician assistant was revoked after years of state administrative proceedings. . . . Proceeding under 28 U.S.C. § 1983, he alleged 'class of one retaliation' and other due process violations. Additionally, he alleged that the PAB violated his rights under the Takings Clauses of the United States and Texas constitutions.").

license was suspended by the Alcoholic Beverage Control Board ("ABCB"), plaintiff appealed to the Louisiana 19th Judicial District Court, which remanded the matter back to the ABCB for a new hearing. At the second hearing, plaintiff's license was suspended for six months, and that ruling was also appealed to the 19th Judicial District Court and was affirmed. The ABCB's decision was also affirmed by the First Circuit Court of Appeal, but pursuant to the granting of a writ application, the Louisiana Supreme Court reversed the suspension of the liquor license and found plaintiff was entitled to a *de novo* trial before the state district court.

Identical to the case at bar, in relation to the administrative process before the ABCB, Brossette filed suit in federal court asserting a § 1983 claim against the ABCB, the Director and members of the ABCB, city officials, and the City of Baton Rouge. In response to summary judgment motions, the Middle District found plaintiff's § 1983 claims untimely because plaintiff's "cause of action arose on June 2, 1989, the date he received notice of the suspension of his license." Brossette, at 762. Notably, the Eastern District found that "[t]he prescriptive period was neither interrupted nor tolled by Brossette's appeals to the state courts for a review of the ABCB's decision." Brossette, at 763.[29]

_____

[29] In response to Footnote 11 in Haygood's Brief (p. 37), an exception of prematurity was asserted (and granted) in the *state court* proceeding, which did not include a Section

Here, the prescriptive period on Haygood's § 1983 claim began to accrue when Dr. Haygood received the Dental Board's November 8, 2010 Decision revoking his dental license, as dictated by <u>Perez</u>, 765 Fed.Appx. 960, and <u>Brossette</u>, 837 F.Supp. 759. As a result, the District Court's finding that Haygood's claims were frivolous and, thus, warranted an award of attorney's fees pursuant to § 1988 was not an abuse of discretion and should be affirmed.

2. <u>The § 1983 Claim was Baseless and Frivolous.</u>

Haygood's arguments in Brief that the District Court engaged in *post hoc* considerations and failed to give weight to Haygood's factual allegations misses the mark. The District Court found attorney fees appropriate as the § 1983 claim was clearly prescribed: "[P]laintiffs clearly knew, or should have known, of the overt acts which might constitute a § 1983 violation at least two years before the instant suit was filed." ROA.1836. Haygood's factual allegations, even assumed true, do not change the fact the claim was untimely. Indeed, it's Haygood's factual allegations that establish, on the face of the Complaint, that the § 1983 claim was prescribed.

This Court has held that "time-barred suits are meritless and properly

---

1983 claim; however, the Louisiana Second Circuit of Appeal reversed the District Court's granting of the exception of prematurity.

deemed frivolous."[15] And federal district courts in this Circuit have

consistently (and correctly) held that prescribed claims are frivolous.[16] As

Haygood's claim was clearly prescribed, the award of attorney's fees here

was appropriate under 42 U.S.C. § 1988.

In Brief (pp. 19 - 20), Haygood quotes a decision from this Court at

---

[15] Provensal, at 976 - 977; *see also* Pope v. MCI Telecommunications Corp., 937 F.2d 258, 267 (5th Cir. 1991) ("Pope came to court with untimely claims of discrimination under § 5221k, frivolously and unreasonably ignoring altogether the Texas time limitation."); Brown v. Pool, 79 F.App'x 15, 17 (5th Cir. 2003) (unpublished) ("A district court may *sua sponte* dismiss a complaint as frivolous on statute-of-limitations grounds if it is clear from the face of a complaint that the claims asserted are time-barred"and "Because Brown knew he had suffered an injury, at the latest, by September 1999, the district court did not abuse its discretion in dismissing Brown's 42 U.S.C. § 1983 complaint as frivolous because it was filed beyond the applicable statute of limitations."); and Zihlavsky v. Police Dep't of Bossier City, 244 F.3d 136 (5th Cir. 2000) (unpublished) ("The district court also properly dismissed Zihlavsky's claims, stemming from the events in 1996, as frivolous because the claims were prescribed under Louisiana's one-year prescriptive period.").

[16] *See, e.g.,* Jackson v. Lawmakers, CV 19-10137, 2019 WL 2870949, at *2 (E.D. La. June 10, 2019), *report and recommendation adopted*, CV 19-10137, 2019 WL 2869084 (E.D. La. July 3, 2019) ("Prescribed claims are properly dismissed as frivolous."); Puderer v. Cain, CV 19-156-JWD-RLB, 2019 WL 4315019, at *2 (M.D. La. Aug. 19, 2019), *report and recommendation adopted*, CV 19-156-JWD-RLB, 2019 WL 4307876 (M.D. La. Sept. 11, 2019) ("District courts are authorized to dismiss a complaint as frivolous when "it is clear from the face of a complaint filed in forma pauperis that the claims asserted are barred by the applicable statute of limitations."); McGee v. Krebs, 1:15-CV-65-LG-RHW, 2015 WL 7290965, at *5 (S.D. Miss. Nov. 18, 2015), *judgment entered*, 1:15-CV-65-LG-RHW, 2015 WL 7307096 (S.D. Miss. Nov. 18, 2015); Valdez v. U.S. Marshal Serv., 6:13-CV-2376, 2014 WL 4103204, at *1 (W.D. La. Aug. 13, 2014); Gamez-Abrego v. Orleans Par. Jail, No. 10-1595, 2010 WL 3523038, at *3 (E.D. La. July 19, 2010) *report and recommendation adopted*, No. 10-1595, 2010 WL 3523037 (E.D. La. Sept. 1, 2010); Jeanpierre v. Orleans Sheriff Gusman, No. 10-4395, 2010 WL 5638296, at *1 (E.D. La. Nov. 30, 2010) *report and recommendation adopted sub nom.* Jeanpierre v. Gusman, No. 10-4395, 2011 WL 231747 (E.D. La. Jan. 24, 2011); and Willis v. W. Carroll Par. Det. Ctr., No. 09-1716, 2010 WL 2291994, at *5-6 (W.D. La. Apr. 28, 2010) *report and recommendation adopted*, No. 09-1716, 2010 WL 2291996 (W.D. La. June 2, 2010).

length—<u>Doe v. Silsbee Indep. School. Dist.</u>, 440 Fed. Appx. 421 (5th Cir. 2011)—in support of "well-established" law in this Circuit on when attorney's fees under § 1988 are appropriate. But the lengthy quote from <u>Doe</u> addresses factors and considerations based upon the merits of or grounds for the § 1983 claim—*i.e.*, are the grounds or factual allegations relied upon to assert the claim groundless or frivolous. The <u>Doe</u> decision does not negate this Circuit's line of jurisprudence finding prescribed claims frivolous.

      3.  <u>The Accrual Date for Malicious Prosecution Is Not Applicable.</u>

To refute the untimeliness of the § 1983 claim, Haygood attempts to use the accrual periods applicable to "malicious prosecution" or "fabrication of evidence", both of which are rooted in criminal proceedings and subsequent § 1983 claims related to such criminal proceedings. Indeed, all the cases relied upon by Haygood on this front are §1983 civil claims instituted after a criminal proceeding – <u>Fusilier</u> (806 Fed. Appx. 280), <u>McDonough</u> (139 S.Ct. 2149), and <u>Castellano</u> (352 F.3d 939). And Haygood ignores the fact that this Circuit, at the time of the alleged actions of Appellees and when the District Court granted Appellee's dismissal due to prescription, denied the existence of a constitutional malicious prosecution

claim.[30]

Further, all signs point to the conclusion that decisions like

McDonough v. Smith, 139 S.Ct. 2149, 2161; 204 L.Ed.2d 506 (2019)—which

is relied upon by Haygood to argue that his due process claims sound in

malicious prosecution and, thus, did not begin to accrue until after he

"prevailed" by having his license revocation overturned—are rooted in

"pragmatic concerns" associated with civil proceedings and parallel *criminal*

proceedings.[31] Such concerns are not present when dealing with a state

---

[30] *See* Morgan v. Chapman, 969 F.3d 238, 245 (5th Cir. 2020) ("This circuit used to recognize an analogous constitutional right to be free from malicious prosecution. *See Gordy v. Burns*, 294 F.3d 722 (5th Cir. 2002). Today, it does not."); Castellano v. Fragozo, 352 F.3d 939, 953–54 (5th Cir.2003) ("Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion."); and Guerra v. Castillo, 82 F.4th 278, 289 (5th Cir.2023) ("But Fifth Circuit case law between 2003 (*Castellano*) and 2021 (*Anokwuru*) explicitly denied the possibility of a constitutional malicious prosecution claim.").

[31] *See* McDonough, at 2156–57 ("We follow the analogy where it leads: McDonough could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution. As *Heck* explains, malicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel **criminal** and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments. *See id.*, at 484–485, 114 S.Ct. 2364; *see also Prosser & Keeton* § 119, at 874; Dobbs § 589, at 402. The requirement likewise avoids allowing collateral attacks on **criminal** judgments through civil litigation. *Heck*, 512 U.S. at 484, 114 S.Ct. 2364. These concerns track 'similar concerns for finality and consistency' that have motivated this Court to refrain from multiplying avenues for collateral attack on **criminal** judgments through civil tort vehicles such as § 1983.") (emphasis added); *see also* Heck v. Humphrey, 512 U.S. 477, 484; 114 S.Ct. 2364, 2371; 129 L.Ed.2d 383 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior **criminal** proceeding in favor of the accused. *Prosser and Keeton, supra*, at 874; *Carpenter v. Nutter*, 127 Cal. 61, 59 P. 301 (1899). This requirement 'avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of

administrative proceeding and a parallel civil proceeding. Indeed, Haygood identified no pragmatic concerns when he filed his 2011 State Court Petition against Appellees while the Dental Board's administrative proceeding was still on appeal at the Louisiana Fourth Circuit Court of Appeal.[32]

But even assuming, for the sake of argument, that a malicious prosecution claim under § 1983 could stand, which is denied, Haygood's argument still fails as there was no "bona fide termination in favor" of Haygood.[33] While it is true that the Louisiana Fourth Circuit Court of Appeal found Haygood's due process rights were violated during the 2010 administrative proceeding, such finding was limited to the actions of one

---

the claimant [sic] succeeding in the tort action after having been convicted in the underlying **criminal** prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' 8 S. Speiser, C. Krause, & A. Gans, *American Law of Torts* § 28:5, p. 24 (1991). Furthermore, 'to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit.' *Ibid*. . . . We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding **criminal** judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.") (emphasis added) and Horne v. Polk, CV-18-08010-PCT-SPL, 2019 WL 1676016, at *2 (D. Ariz. Apr. 17, 2019), *aff'd*, 19-15942, 2020 WL 3469112 (9th Cir. June 25, 2020) ("However, *Heck* applies only when there is an extant conviction.") (internal citations omitted).

[32] *See* State Court Petition at ROA.383 and the Fourth Circuit's Opinion at ROA.90-104.

[33] *See e.g.,* McDonald v. Bowen, 54,798, p. 8 (La. App. 2 Cir. 11/16/22); 351 So.3d 914, 919.

defendant in this suit (*not* Appellees). ROA.67.[34] Moreover, the Fourth

Circuit *remanded* the matter to the Dental Board for further proceedings,

which never formally occurred because, on June 9, 2016, Haygood entered a

Consent Decree as to charges that were the subject of the 2010

administrative proceeding.[35] Thus, even assuming its applicability or

availability in this Circuit, Haygood's § 1983 claim did not sound in

"malicious prosecution" as the matter was never resolved on the merits in

favor of Haygood.

Finally, Haygood cites this Court's decision in Fusilier v. Zaunbrecher,

806 Fed. Appx. 280 (5th Cir. 2020), regarding timeliness and accrual. But

like other cases relied upon by Haygood, Fusilier involved a criminal

proceeding/prosecution. Consider this Court's definition of "malicious

prosecution" in Fusilier: "As the Supreme Court added just last year,

malicious prosecution involves a claim that a 'defendant instigated a

*criminal* proceeding with improper purpose and without probable cause.'"

Fusilier, at 282 (quoting McDonough, 139 S.Ct. at 2156) (emphasis added).

---

[34] *See also* Fourth Circuit Opinion (ROA.90).

[35] *See* http://www.lsbddocs.org/Search/Index/D5334. This Court may take judicial notice of the Consent Decree, which is a public document. *See, e.g.,* Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir.2011) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

This simply is not an instance where "malicious prosecution" is the proper accrual period to be applied.

In any event, the question is whether the District Court erred in finding Haygood's § 1983 claims frivolous. Considering Haygood was aware of the alleged due process violations and the revocation of his dental license in November of 2010 and the fact he made the same allegations in his 2011 State Court suit[36] without making a § 1983 claim *until* this suit in 2013,[37] the District Court's finding that Haygood's § 1983 claim was frivolous was not in error and should be affirmed.

## B. Recoverability of attorney fees under LUTPA (La. R.S. § 51:1409)

The District Court dismissed Haygood's Louisiana Unfair Trade Practices Act ("LUTPA") claims because (1) Haygood failed to plausibly plead a conspiracy amongst the defendants and (2) failed "to allege any act by [Appellees] which would enable them to achieve an unfair competitive advantage over Plaintiffs (nor can he since none of [the Appellees] are dentists)."[38] Simply put, even assuming all facts as true and construing the Complaint in favor of Haygood, the factual allegations failed to establish a

---

[36] State Court Petition at ROA.383.

[37] Federal Complaint at ROA.57.

[38] ROA.1843.

claim under LUTPA. And when a plaintiff asserts groundless LUTPA claims, brought in either bad faith or to harass the defendant, "the court may award to the defendant reasonable attorney fees and costs." La. R.S. 51:1409(A).

> 1. <u>There Was No Good Faith Basis to Bring A LUTPA Claim Against Appellees.</u>

Under LUTPA, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. R.S. § 51:1405.[39] And "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually. . . ." La. R.S. § 51:1409. As noted by this Court, "It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the LUTPA's prohibition. The range of prohibited practices under the statute is 'extremely narrow.'"[40]

Haygood argues that the District Court legally erred in finding that the LUTPA claim was groundless and brought in bad faith or for purposes of

---

[39] "'Trade' or 'commerce' means the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state." La. R.S. 51:1402.

[40] <u>Cenac v. Orkin</u>, L.L.C., 941 F.3d 182, 194 (5th Cir. 2019) (internal citations omitted).

harassment such that attorney fees were warranted. Specifically, Haygood takes issue with the District Court's finding that, because Appellees are not dentists and Haygood's conspiracy claims were bald allegations lacking plausibility, Haygood could not state a claim under LUTPA as to Appellees.[41]

Under LUTPA, the question is whether Appellees, *in the conduct of any commerce or trade*, committed any unfair or deceptive trade practice and whether such practice(s) caused a cognizable harm to Haygood.[42] In his Appellant Brief (p. 42), Haygood states the basis for the LUTPA claim:

> In the Complaint, Haygood alleged a conspiracy between various dentists, the Louisiana State Board of Dentistry (and it administrators, employees and contractors), and investigators Morrison, Glorioso, and Moorhead (and others) **to eliminate Dr. Ryan Haygood as a competitor** in the South Shreveport-Bossier markets. The purpose of LUTPA is to strike down these very practices and **foster competition**.[43]

To be clear, Haygood asserts that Appellees committed (or conspired to commit) unfair or deceptive trade practices for the purpose (and competitive motive) of removing Haygood as a "competitor" in the

---

[41] *See* District Court's Memorandum Ruling granting Appellees' Motion to Dismiss at ROA.1832.

[42] La. R.S 51:1405(A) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.") and 51:1409 ("Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.").

[43] Emphasis added.

Shreveport-Bossier City area dental market.

If Haygood is the "competitor" that is sought to be removed, then based on this contention and the alleged injury (the revocation of his dental license), when evaluating Appellees on an individual basis due to the lack of plausible conspiracy claim, Appellees had to be a competitor of Dr. Haygood—*i.e.*, the motivation and goal had to be to remove or harm him as their competition. Haygood has consistently asserted that this connection is not necessary under Louisiana law. As discussed below, Haygood is incorrect on this legal point and, further, absent such a showing of a relationship between Appellees and Haygood, respectfully, the LUTPA claim, as described by Haygood, does not make sense.

First, Appellees are not dentists by trade and do not have any interest in the Shreveport/Bossier City area dental market. It is unimaginable what facts, evidence, or scenario would lead to a finding (or a cause of action) that Ogden, Morrison, Moorhead, or Glorioso committed an unfair or deceptive act or practice in the "conduct" of "trade or commerce" that was competitively motivated to remove Dr. Haygood (and his dental practice) from the Shreveport/Bossier City dental market. Simply stated, there is no business or competitive advantage to be gained by Appellees and, according to this Court, "[t]he 'defendant's motivation' is a critical factor—his 'actions

must have been taken with **the specific purpose of harming the competition**.'" IberiaBank v. Broussard, 907 F.3d 826, 839–40 (5th Cir. 2018) (emphasis added).[44]

Haygood never provides what would potentially motivate Moorhead (a dental assistant in the Monroe, Louisiana area) and Glorioso (a dental assistant in the Alexandria, Louisiana area) to harm a dentist in the Shreveport/Bossier City area. And the only allegations regarding motive as to Ogden and Morrison are financial motives related to securing monies for the operation of the Dental Board[45] - not a motivation aimed at "harming the competition."

The key point missing from Haygood's analysis is that the *defendant* must be in the "conduct" of a "trade or commerce" aimed at harming the competition to state a claim under LUTPA. Again, Haygood claims that Appellees committed unfair trade practices that negatively affected Dr. Haygood *as a* dentist and asserts that the goal of Appellees (and others) was to remove him as competition. Thus, Appellees' actions had to be aimed at achieving an unfair, competitive advantage over Dr. Haygood in the realm of

_____

[44] *See also* Pikaluk v. Horseshoe Entm't, L.P., 19-30456, 810 Fed. Appx. 243, at 250 (5th Cir. 2020) (". . . motivation and intent are critical factors in determining whether [its] conduct was unfair or deceptive.").

[45] *See, e.g.,* ROA.1696, at ¶ 38, ROA.1698, at ¶ 45, and ROA.1704 at ¶ 65.

dentistry—based on Haygood's own allegations and claimed injury/damages.[10]

Appellees do not disagree that the Louisiana Supreme Court's decision in Cheramie[46] clarified that the plaintiff does not have to be a competitor or consumer of a defendant to state a LUTPA claim but that anyone that is injured by unfair or deceptive acts occurring in a trade has standing to bring suit, but from here is where the error occurs in Haygood's analysis. Haygood errs in attempting to make this a "standing" issue - *i.e.*, whether Haygood has standing to bring a LUTPA claim. The question is not whether Haygood must be a competitor or consumer of Appellees to bring a LUTPA claim, but, based upon the allegations in his Complaint and the asserted injury,[11] whether Defendants were (or could be) a competitor of Dr. Haygood.

But assume for the sake of argument that, as Haygood asserts, the analysis is whether the Appellees were in *any* trade or commerce (not necessarily dentistry) such that it caused harm to Dr. Haygood and his dental practice - *i.e.*, whether the Appellees engaged in *any* trade or

---

[10] Complaint at ROA.57. *See also* District Court's Opinion granting Motion to Dismiss (ROA.1838) ("Here, Plaintiffs allege that the defendants were involved in a conspiracy to purposefully restrain trade among dentists in Northwest Louisiana.").

[46] Cheramie Services Inc. v. Shell Deepwater Prod., Inc., 09-1633 (La. 4/26/10), 35 So.3d 1053.

[11] ROA.57.

32

commerce in an unfair or improper manner that negatively affected Haygood. Based on Haygood's Brief (p. 42), this would be in the trade of investigators (Morrison, Moorhead, and Glorioso) and the trade of working at the Louisiana Dental Board (Ogden), which is not a trade and, further, has no "competition" as it is a regulatory body. In any event, Haygood would *still* have to show that the Appellees were motivated by the goal of achieving an unfair, competitive advantage *in the trades of* investigators and working at the Louisiana Dental Board - otherwise, it cannot constitute a LUTPA claim under Louisiana law. Haygood never alleged sufficient (or any) facts to support a *competitive motive* in relation to Appellees' purported, respective trades, such that they committed unfair or deceptive acts or practices that ultimately harmed Dr. Haygood (as a dentist) and his dental practice.[47]

> 2. *Cheramie* Does Not Change Louisiana Law As To What Is Necessary To State A Claim Under LUTPA.

Haygood erroneously attempts to use Cheramie Services Inc. v. Shell Deepwater Prod., Inc., 09-1633 (La. 4/26/10), 35 So.3d 1053, to assert that Haygood can state a claim against Appellees and, for the purposes of this appeal, that Haygood's claims should not have been found groundless and in bad faith or for harassment. As noted above, it is correct that the plurality

---

[47] Notably, in his Restated Complaint, Haygood only lists Drs. Hill and Dies, along with their dental practices, and Dr. Blackwood as "competitors" of Haygood. ROA.1689-1690, 1701.

decision in <u>Cheramie</u> held that a LUTPA claim, particularly who has a cause of action, is not limited to business consumers and competitors of a defendant, but any person "who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive." <u>Cheramie</u>, at 1057. But, again, the question is not whether Haygood has *standing* to bring a LUTPA claim, but whether the LUTPA claim asserted by Haygood can stand against Appellees – four non-dentist who have no interest in the Shreveport/Bossier City dental market or any competitive advantage to be gained by removing Haygood from such market.

<u>Cheramie</u> does not change the law in Louisiana that the *defendant* must have conducted the alleged unfair trade practice in the *conduct* of a *trade* or *commerce*. *See* La. R.S. 51:1405. Indeed, the <u>Cheramie</u> court found that "Although LUTPA is available to plaintiffs other than business competitors and consumers, a plaintiff's burden of proving an unfair or deceptive method, act, or practice **on the part of a defendant is not lessened by this opinion**." <u>Cheramie</u>, at 1058 (emphasis added).[13] As the

---

[13] *See also* <u>Nursing Enterprises, Inc. v. Marr</u>, 30,776 (La. App. 2 Cir. 8/19/98), 719 So.2d 524, 528 ("A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition.") and <u>IberiaBank v. Broussard</u>, 907 F.3d 826, 839–40 (5th Cir. 2018) ("The 'defendant's motivation' is a critical factor— his 'actions must have been taken with the specific purpose of harming the competition.' . . . Furthermore, it appears that the trial court did not assess a 'critical factor' in any

master of his Complaint, Haygood alleged that the conduct of Appellees harmed him in the dental industry[48] and, further, that the goal of Appellees was to remove him as <u>competition</u>.[49] As such a claim could not stand against Appellees, the District Court's finding that Appellees did not (and could not) commit a LUTPA violation under the circumstances and allegations pleaded was correct.[50]

### 3. <u>Civil Conspiracy</u>

As to the civil claim of conspiracy, the District Court correctly found that Haygood failed to allege a conspiracy in the context of the LUTPA claim.[51] Louisiana law provides that "he who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." La. C.C. art. 2324. As noted by this Court, "Louisiana law does not create a self-standing tort of conspiracy; 'rather the actionable element of article 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing

---

LUTPA claim: 'the defendant's motivation.'").

[48] *See, e.g.,* ROA.73, at ¶ 60 and ROA.82, at ¶93.

[49] <u>Id.</u>

[50] *See* ROA.1843 ("In the instant matter, Dr. Haygood fails to allege any act by these Defendants which would enable them to achieve an unfair competitive advantage over Plaintiffs (nor can he since none of these Defendants are dentists).").

[51] ROA.1842.

plaintiff's injury.'"[52]

"While a conspiracy can be proven by circumstantial evidence, a plaintiff 'must be able to prove that an agreement existed between the accused defendants to commit the illegal or tortious act which resulted in the plaintiff's injury.'"[53] A plaintiff must "establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing."[54] Thus, "for a conspiracy to exist there must be agreement to commit the illegal act, the commission of the act, and agreement as to the result of the act."[55] And "as a predicate to imposing liability for civil conspiracy, a plaintiff must first establish the substantive offense underlying the alleged conspiracy."[56]

Here, as found by the District Court, Haygood failed to make sufficient allegations to support a claim for conspiracy as Haygood failed to allege facts evidencing (even circumstantially) that there was an agreement to commit an illegal or tortious act, the further commission of such act, and an

---

[52] Snow Ingredients, Inc. v. SnoWizard, Inc., 833 F.3d 512, 526 (5th Cir. 2016) (internal citations omitted).

[53] Id.

[54] Id.

[55] Marks v. Motor City, 2018-548 (La. App. 3 Cir. 2/20/19); 265 So.3d 86, 92.

[56] Branden v. F.H. Paschen, S.N. Nielsen, Inc., CV 19-2406, 2019 WL 1760694, at *4 (E.D. La. Apr. 22, 2019).

agreement as to the intended result of the act. ROA.1838-1839. Moreover, Haygood's Brief offers no citations, commentary, or really any argument that the conspiracy claim was sufficiently plead.

Based on the inability of Haygood to state a claim against Appellees under LUTPA and the failure to state a plausible claim for conspiracy with the other defendants, Haygood's LUTPA claim was groundless and brought in bad faith or for the purposes of harassment. In turn, Appellees were properly awarded attorneys' fees pursuant to Louisiana Revised Statutes 51:1409.

### 4. The *Caldwell* and *IberiaBank* Decisions

Haygood urges that the District Court's ruling in Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co., No. 17-0200 (W.D. La. 2018), 2018 WL 2209165, evidences the District Court's error in dismissing Haygood's LUTPA claims as the Caldwell decision reflected a proper application of the Cheramie decision. But Caldwell did not change the law or, more importantly, affect the District Court's analysis that Haygood, under the facts pleaded in his Complaint, could not state a claim under LUTPA against Appellees.

And the same is true of this Court's decision in IberiaBank v. Broussard, 907 F.3d 826 (5th Cir. 2018), which Haygood asserts also shows

the error in the District Court's ruling, because it, too, held that LUTPA covers actions "in the conduct of *any* trade or commerce." (Emphasis in original). As analyzed above, even assuming the Court were to evaluate the Complaint as to whether Haygood stated a claim under LUTPA assuming the Appellees were in the trades of "investigating" and working at the Dental Board, the Complaint still fails to state a claim as Haygood fails to allege any competitive advantage or motive to be achieved by Appellees in their respective "trades" by eliminating Haygood from the Shreveport/Bossier City dental market.

Finally, Haygood cites jurisprudence that purportedly supports that the LUTPA conspiracy claim was not "groundless."[57] But the District Court did not find that the "conspiracy" claim was "groundless," it found it was not sufficiently pled to pass the plausibility requirements established in Twombly. ROA.1838–1839.[58] What the Court did find groundless was the LUTPA claim against Appellees on an individual basis. ROA.1842–1843, 3572. And despite Haygood contending otherwise,[59] the District Court did provide reasoning for why the LUTPA claim was in bad faith or for purposes

---

[57] Haygood's Appellant Brief, p. 43.

[58] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

[59] Haygood's Appellant Brief, pp. 29 and 31.

of harassment, which is the same reason it dismissed the claim –Haygood had no legal basis to assert a LUTPA claim against Appellees as non-dentist under the facts pleaded by Haygood. ROA.3572.[60] The District Court's award of attorney fees pursuant to Louisiana Revised Statutes 51:1409(A) was appropriate and should be affirmed.

## C. The Award Was Reasonable

Haygood argues that, even assuming Appellees were properly awarded attorney fees, "the amount of attorney's fees is excessive and unreasonable."[61] This contention is premised on the following: (1) the record does not reflect that the District Court "closely scrutinized" the time entries offered by Appellees[62] and (2) "only fees that have actually been paid by the defendants are compensable."[63]

### 1. The District Court Expressly Noted Its Thorough Review of the Billing Submissions.

"In determining reasonable attorney's fees, the district court is not

---

[60] ROA.3572 ("In its March 2014 ruling, this Court concluded that the Haygood Plaintiffs' failed to allege any act by Defendants which would enable them to achieve an unfair competitive advantage. See Record Document 110 at 12. The Court further noted that such allegations were not possible because none of these Defendants were dentists. See id. Thus, the undersigned believes that the totality of the record establishes that the Haygood Plaintiffs' LUPTA claims were groundless and were brought in bad faith or for purposes of harassment.").

[61] Haygood's Appellant Brief, p. 31.

[62] Haygood's Appellant Brief, p. 18.

[63] Haygood's Appellant Brief, p. 18.

required 'to achieve auditing perfection,' as '[t]he essential goal in shifting fees (to either party) is to do rough justice.' Instead, '[d]istrict courts may 'take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." As the Supreme Court has warned, 'trial courts need not, and indeed should not, become green-eyeshade accountants.'" <u>DeLeon v. Abbott</u>, 687 Fed.Appx. 340, 343 (5th Cir. 2017).

In Appellants' Brief, Haygood never addresses or asserts what in the legal bills was not reasonable or what was "duplicative," "unnecessary," or "excessive."[64] Instead, Haygood simply states in conclusory fashion that the District Court failed to engage in "such inquiry" despite the District Court stating it "conducted a thorough review" of Appellees' billing submissions. ROA. 4012.

The attorney fee award of $110,261.16 was reasonable. At the time of Appellees' Motion for Attorney Fees, this case had been pending for close to five years and the District Court's docket sheet (ROA.1) evidences the motion practice that occurred prior to the Court's award. Again, the District Court expressly stated it "conducted a thorough review of the Detailed Time Report submitted by" Appellees and noted that "Defendants have exercised

---

[64] *See* Haygood's Appellant Brief, pp. 18, 31–32.

sound billing judgment in seeking this award of attorneys' fees by excluding entries related to Plaintiffs' case pending in State Court and writing off otherwise unnecessary entries before submitting time records to this Court." (ROA.4012). The District Court went on to find that "the hours invoiced as represented in the detailed time report are reasonable for purposes of the lodestar calculation" and found the rates, which varied from $125 - $140 per hour, acceptable. ROA.4013. The amount awarded was a reasonable figure for the work reflected on the bills submitted by Appellees.

    2.  <u>The Bills Submitted with Appellees' Time Report Evidence Payment.</u>

Haygood asserts that "only fees that have actually been paid by the defendants are compensable"[65] and cites <u>Abbyad v. Mathes Group</u>, 95-1543 (La. App. 4 Cir. 3/14/96), 671 So.2d 958, in support. But <u>Abbyad</u> does not support this proposition and a quote from the Fourth Circuit's decision readily evidences Haygood's misrepresentation on this point:

> As to the unfair trade practices claim, which was based upon Mathes' having sent the Abbyads an unreasonably high bill for services rendered, we find that the jury's decision was not error. The evidence showed that the Abbyads never paid the bill, or even considered paying it. There is no evidence to show that they incurred actual damages due to the alleged unfair trade practices. Therefore, the trial court properly declined to award either damages or attorney's fees, which are not recoverable under the Unfair Trade Practices Act when the claimant has

---

[65] Haygood's Appellant Brief, pp. 18 and 32.

failed to prove damages.

Abbyad, at 962. The Abbyad court did not hold that attorney fees are only recoverable if "paid by the defendants."[66] In Abbyad, the "practice" that was urged to be a LUTPA violation was a bill the plaintiff received from the defendant and considering the plaintiff did not pay the bill or intend to pay the bill, the jury correctly found damages (and an award of attorney fees) inappropriate as the plaintiff incurred no actual damages.

Next, Haygood cites a 1992 decision out of the Louisiana First Circuit - Thibaut v. Thibaut, 607 So.2d 587, 591 (La. App. 1 Cir. 1992), *writ denied*, 612 So.2d 101 (La. 1993), and *writ denied*, 612 So.2d 37 (La. 1993), and *writ denied*, 612 So.2d 37 (La. 1993), and *writ denied*, 612 So.2d 38 (La.1993), and *writ denied*, 612 So.2d 38 (La.1993). Like Abbyad, Thibaut does not support the contention that proof of attorney fees being paid by the defendants is a threshold requirement for the Court to award attorney fees. The Thibaut court reversed the lower court because the fee award was to the individual plaintiffs/partners (not the partnership), but the individual partners did "not have a right of action under" LUTPA and, thus, could not recover attorney fees under LUTPA. Thibaut, at 610. And the only reference in Thibaut regarding "fees paid" related to fees awarded to the liquidator

_____

[66] *See* Haygood's Appellant Brief, p. 18.

which exceeded what the liquidator charged the partnership for services rendered and, thus, the First Circuit reduced that amount to what the partnership was actually charged by the liquidator.

Regardless, even assuming the law requires such a showing, throughout the actual bills submitted by Appellees, and which the District Court reviewed, the bills reflect payments made. *See, e.g.,* ROA.3838, 3845, 3846. The attorney fee award was reasonable and should be affirmed.

## CONCLUSION

The District Court did not abuse its discretion in awarding attorney fees to Appellees pursuant to 42 U.S.C. § 1988 and Louisiana Revised Statutes 51:1409. The § 1983 claim was clearly time-barred and, thus, properly deemed frivolous such that an award of attorney fees was appropriate and warranted. As for the LUTPA claim, Haygood failed to plead facts sufficient to support a conspiracy between the defendants and as to Appellees on an individual basis, under the facts pleaded and the injury/damage claimed, Haygood did not (and could not) state a claim against Appellees under LUTPA. Thus, Haygood's LUTPA claim was groundless and asserted in bad faith or for the purpose of harassment.

Finally, the award was reasonable. The bills submitted were reviewed by the District Court, supported the hours and work performed on behalf of

Appellees, and a more than reasonable hourly rate was charged. After applying the lodestar method, the District Court concluded the amount owed and did not abuse its discretion or commit clear legal error in reaching the monetary figure. The District Court's ruling should be affirmed.

FAIRCLOTH MELTON SOBEL AND BASH, LLC

By: _/s/ Barbara Bell Melton_
Barbara Bell Melton (A.C.) (La. Bar #27956)
bmelton@fairclothlaw.com
Franklin "Drew" Hoffmann (La. Bar #35824)
dhoffmann@fairclothlaw.com
105 Yorktown Drive
Alexandria, LA 71303
Phone: (318) 619-7755/Fax: (318) 619-7744

**Counsel for Appellees, Barry Ogden, Camp Morrison, Karen Moorhead, and Dana Glorioso**

## CERTIFICATE OF SERVICE

Counsel also certifies that on **March 1, 2024**, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, *via* the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/. Counsel further certifies that required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13 and the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

  /s/ Barbara Bell Melton

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with Fed. R. App. P. 32, which provides that Principal Briefs must not exceed 30 pages or 13,000 words, because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the body of this brief contains, inclusive of footnotes, **10,766** words. Further, this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word software in 14 pt Georgia Font. Alexandria, Louisiana, this **1st** day of **March**, **2024**.

  /s/ Barbara Bell Melton
Attorney of Record for
Defendants/Appellees, Barry Ogden,
Camp Morrison, Karen Moorhead, and
Dana Glorioso
Dated: **March 1, 2024**